Glenn R. Morton, J.
The defendant was indicted by the Genesee County Grand Jury on December 8, 1967 for the crime of murder in violation of section 125.25 of the Penal Law. Prior to trial, the defendant duly demanded a hearing concerning certain alleged statements pursuant to- section 813-f et seq. of the Code of Criminal Procedure. On December 13,1967, January 2, 1968 and May 27, 1968, the matter came on for a hearing before this court, and as a result thereof, the following facts were established. On November 4, 1968 Trooper Dennis Stefaniak was called to investigate an alleged shooting incident occurring at the Robert Lee Smith Labor Camp, East Bethany, New York. On his arrival at approximately 7:15 a.m. he observed the defendant standing with a group of 15 to 18 people. At this time, Mr. Smith identified the defendant as the person who shot Sylvester (“ Bro. ”) Collins and Trooper Stefaniak took the *168 defendant in custody. The defendant was then immediately advised that “ he did not have to make a statement, any statement he might make would be held against him and if he desired counsel, he could have the same at this time and if he could not afford counsel, an attorney would be appointed for him. ” The defendant simply replied “he didn’t want anybody ” and proceeded with Trooper Stefaniak to the place where Mr. Collins was lying. Shortly thereafter, Trooper Stefaniak talked to the defendant; at which time the defendant made the statements ‘ ‘ I shot him ” and “ Bro. (Sylvester Collins) was on my back. ” Further, in response to an inquiry from Trooper Stefaniak, the defendant later replied that the gun was ‘ ‘ in my room ’ ’ and then proceeded to point the weapon out.
At approximately 8 a.m. the defendant was transported to the New York State Police barracks at Batavia, New York where he was additionally interviewed by investigator Bobert M. Bar rus in the presence of Trooper Kalisz and Sergeant Hendricks. Prior to this interview, the defendant was again advised by investigator Barrus that “ he had the right to remain silent, that if he made any statement it could be used against him in a criminal action, he was entitled to have an attorney present before any further questions were asked and if he is unable to afford an attorney, one would be appointed for him. ” The defendant indicated he did not want an attorney and the interview commenced culminating 55 minutes later in the defendant’s written statement.
Prior to trial, the defendant was examined pursuant to section 658 of the Code of Criminal Procedure. As a result thereof, in a report dated February 16, 1968 the defendant was found to be aware of the nature of the charges against him, to be capable of understanding the proceedings and to aid in his defense. Incident thereto, Dr. Thomas Irwin, Clinical Psychologist, testified and this court so finds that the defendant however is a mental defective. The defendant was given a comprehensive psychological evaluation consisting of 11 tests. The defendant was in the defective range in all but three of these tests. The defendant’s full scale I.Q. was 68, placing him in the moron category or being on an intelligence level with approximately 3% of the population. Additionally, the defendant is for all practical purposes illiterate and has less than a sixth grade education.
Based on the foregoing findings, it is abundantly clear that the defendant on both occasions was given the specific warnings required under Miranda v. Arizona (384 U. S. 436) and outwardly waived same. The only question that remains is whether this defendant’s particular waiver was effective under the *169 circumstances; that is, considering the low state of his mentality.
It is established doctrine that waiver of a constitutional right is occasioned only when an accused acts understandingly, competently and intelligently (Matter of Bojinoff v. People, 299 N. Y. 145). In the instant situation, this same principle was recognized by the court in adopting the Miranda rule when it provided ‘‘ If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self incrimination ” (Miranda v. Arizona, supra, p. 475). (Emphasis added). Without more, it is apparent that not only is it relevant but that the court must consider the accused’s mental condition at the time in determining whether there has been an effective waiver (People v. Drake, 15 N Y 2d 626; People v. Davis, 23 A D 2d 963). This principle has been applied to establish that there is an inference of fact that a 17-year-old’s waiver is not intelligently made (People v. Amos, 21 A D 2d 80; People v. Lacy, 26 A D 2d 982); and that a low mentality in the area of an 83 I. Q. is sufficient to show that a purported waiver was not competently or intelligently made (People v. Drake, 26 A D 2d 729).
The underlying rationale is that an accused must be warned to the extent that he understands not only the warning but the full consequences thereof (People v. Dumas, 51 Misc 2d 929). The existence of some degree of intelligence is therefore a prerequisite and must exist to the extent of that possessed by a reasonable man (People v. Lux, 56 Misc 2d 561). Indeed, some courts have gone so far as to state that confessions should not be sought or interrogations continued in any case where it becomes known that the person confessing was of low mentality or had a history of emotional instability (People v. Golwitzer, 52 Misc 2d 925).
Paradoxically in the instant case, the particular issue was subjective and in all likelihood could not have been known by the investigating officers. Be that as it may, the fact remains and considering all the circumstances it cannot be said that the defendant made an intelligent waiver. Neither can it be said that because the defendant was found competent to stand trial, such is sufficient to show that he is capable of making an intelligent waiver. The test applied to a trial with all its procedural safeguards is different than in a preliminary setting, especially considering the heavy burden upon the People.
For the foregoing reasons, the defendant’s motion is granted.